RECEIVED

UNITED STATES DISTRICT COURT

APR 2 3 2010 **FOR THE WESTERN DISTRICT OF LOUISIANA**

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT, LOUISIANA

**SHREVEPORT DIVISION**

JOHNNY JOHNSON

versus

CIVIL NO. 08-0903
JUDGE TOM STAGG

DAVID WADE CORRECTIONAL
CENTER, ET AL.

## MEMORANDUM RULING

Before the court is a motion for summary judgment filed under Rule 56 of the Federal Rules of Civil Procedure on behalf of the David Wade Correctional Center ("DWCC") and Venetia Michael ("Michael"), in her official capacity as the former[1] warden of DWCC. See Record Document 34. The plaintiff, Johnny Johnson ("Johnson"), has filed a memorandum in opposition to this motion. See Record Document 42. For the reasons which follow, the defendants' motion for summary judgment is **GRANTED**.

## I. BACKGROUND

This case concerns employment-related, race-based claims of discrimination. At the time of the events leading to this suit through the time the parties filed the

---

[1]Venetia Michael is no longer the warden of DWCC. See Record Document 34 at 10; id., Ex. 7 (Affidavit of Fran Calhoun) at 1-4.

pending motions, Johnson was a Facility Assistant Maintenance Manager 2 in the Maintenance Division at DWCC.[2] See Record Document 34 at 6. The highest position within the Maintenance Division at DWCC is the Facility Maintenance Manager 4 position. See id.

Johnson's primary claim is that the defendants have repeatedly chosen not to promote him on the basis of his race; Johnson is an African American. See Record Document 42 at 5. Johnson specifically cites three instances where he alleges he was wrongfully denied a promotion. See Record Document 42 at 5 ("Mr. Johnson was denied promotion at Wade on at least three occasions."); Record Document 34, Ex. 4 at 1 and Ex. 5 at 1.[3] In March of 2006 and August of 2008, Johnson unsuccessfully sought a promotion to a Facility Maintenance Manager 4 position. See Record Document 34 at 6. In March of 2006, the position was filled by an American Indian

---

[2]In Johnson's memorandum in opposition to summary judgment, he states that he "has remained at the same position of, Assistant Maintenance Manager 2, at Wade for the past twenty eight (28) years.[sic]" Record Document 42 at 5. This statement seems designed to imply that DWCC and its agents have endeavored to restrict Johnson's progress up the career ladder at DWCC. However, Johnson's application for a Facility Maintenance Manager 4 position reveals that he began working at DWCC in July of 1981 and has since held the following positions at DWCC: Maintenance Repairer 2, Plumber, Senior Plumber, Plumber Foreman and Facility Assistant Maintenance Manager 2. See Record Document 34, Ex. 10 at 7-9. Johnson notes that the reason he moved from serving as Maintenance Repairer 2 to a Plumber and from a Senior Plumber to a Plumber Foreman was due to promotions in 1982 and 1986. See id. According to this application, Johnson has held the Facility Assistant Maintenance Manager 2 position since May 24, 2000. See id.

[3] See infra note 8.

2

male, and in August of 2008,[4] the position was filed by a white male. See id. In July

of 2006, Johnson and a white male applied for a Facility Assistant Maintenance

Manager 3 vacancy. See id. at 20-21. Subsequent to these two applications, the

Facility Maintenance Manager 3 vacancy was closed before a candidate was selected

to fill the position, and the vacancy was converted to a plumber/pipe fitter foreman

position. See id. Johnson asserts the Facility Maintenance Manager 3 position was

converted to prevent his promotion. See id.

Johnson also claims that the defendants are responsible for exposing him to a

hostile work environment, fostering a conspiracy to deprive him of equal protection

under the law, and taking retaliatory actions in response to activity protected under

Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, et seq. See Record

Document 42 at 14-18. In sum, Johnson has asserted that the combined actions of the

defendants give rise to actionable claims under Title VII, 42 U.S.C. §§ 1981, 1983,

1985, 1986 and the Equal Protection Clause of the Fourteenth Amendment to the

United States Constitution. See Record Document 1. The only defendants mentioned

in Johnson's complaint are the Louisiana Department of Corrections/DWCC and

---

[4]The transcript of Johnson's deposition records that Johnson agreed with defense counsel that Michael was no longer at DWCC in 2008. See Record Document 34, Ex. 6 at 39. Thus, it is clear that Michael is not responsible for any alleged discriminatory acts which occurred during that time period.

Venetia Michael, both in her official capacity as warden of DWCC and in her individual capacity. See Record Document 1.

## II. LAW AND ANALYSIS

### A.    Standard Of Review.

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). The party moving for summary judgment bears the initial burden of identifying portions of the record which demonstrate the absence of genuine issues of material fact. See Washburn v. Harvey, 504 F.3d 505, 508 (5th Cir. 2007). The nonmovant then must point to or produce specific facts which show that there is a genuine issue of material fact. See id. All facts and inferences are construed in the light most favorable to the nonmovant. See Puckett v. Rufenacht, Bromagen & Hertz, Inc., 903 F.2d 1014, 1016 (5th Cir. 1990). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under the law applicable to the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. See id. "If factual issues or conflicting inferences exist, the court is not to resolve them; rather, summary judgment must be denied." Puckett, 903 F.2d at 1016.

**B.** **Section 1985(3) And 1986.**

Section 1985(3) of Title 42 of the United States Code provides a cause of action for any party deprived of his or her civil rights due to a conspiracy of "two or more persons." 42 U.S.C. § 1985(3). Johnson has failed to provide any evidence that such a conspiracy was confected to his detriment in the case at bar.

In his memorandum in opposition to summary judgment, Johnson tenders the following paragraph to substantiate his claims under Section 1985:

> In this case, plaintiff shows that the conspiracy involved *the members at David Wade Correctional Facility.* The class of Mr. Johnson is black. He was deprived of employment and the privilege of earning a living without due process. Defendant Venetia Michaels [sic] purposely with intent refused to promote Mr. Johnson, who was a qualified black person [sic]. The Defendants Ray Hanson and Jerry Ward acted in concert with the purpose of a certain result which was to deprive Mr. Johnson of a promotion.

Record Document 42 at 17 (emphasis added). At the time the pending motions were filed, Ray Hanson was the Correctional Assistant Warden 2 at DWCC, and Jerry Ward is the former Facility Maintenance Manager 4 at DWCC. See Record Document 34 at 25. Neither of these individuals is a named defendant in this case.

In the paragraph quoted above, Johnson is asserting, without any citations to record evidence, that several employees at DWCC, in their official capacities, conspired to deprive him of his civil rights. These individuals, in their official capacities,[5] combined with DWCC itself, do not legally constitute the two separate

---

[5]The only two named defendants in Johnson's complaint are DWCC and Michael, in her official and individual capacity. See Record Document 1. As discussed in the paragraphs above,

5

persons required for a conspiracy which may give rise to a cause of action under 42

U.S.C. § 1985(3). These individuals, in their official capacities, and DWCC must,

as a matter of law, all be considered "members of the same collective entity." Hilliard

v. Ferguson, 30 F.3d 649, 653 (5th Cir. 1994). Accordingly, since Johnson has failed

to allege that there is a conspiracy to deprive him of his civil rights which involves

two or more persons, he has failed to assert a valid claim under 42 U.S.C. § 1985(3).

Johnson has also asserted claims under Section 1986 of Title 42 of the United

States Code. This statute, under certain circumstances, creates a right of action

against individuals who neglect to prevent a section 1985 conspiracy. See 42 U.S.C.

---

Michael, in her official capacity, is part of the collective entity known as DWCC, and thus
Michael in her official capacity and DWCC together do not constitute two separate persons who
could conspire, as those terms are used in 42 U.S.C. § 1985(3). See Hilliard v. Ferguson, 30
F.3d 649, 652-53 (5th Cir.1994). Furthermore, simply naming Michael as a defendant in her
individual capacity as well as her official capacity as a former warden of DWCC, without more,
does not create a conspiracy of two or more separate persons sufficient to give rise to a section
1985(3) claim.

> Simply joining corporate officers as defendants in their individual capacities is not
> enough to make them persons separate from the corporation in legal contemplation.
> The plaintiff must also allege that they acted other than in the normal course of their
> corporate duties.

Cole v. Univ. of Hartford, 391 F.Supp. 888, 893 (D. Conn. 1975) (considering a claim under
42 U.S.C. § 1985(3)) (citing Nelson Radio & Supply Co. v. Motorola, Inc., 200 F.2d 911, 914
(5th Cir. 1952)). In this case, no such allegation has been made. It is not alleged that Michael or
any other individual named in Johnson's memorandum in opposition committed any act outside
of the normal course of their corporate duties which is relevant to the present matter. Johnson
only references actions which are directly connected to these individuals' official roles as agents
and employees of DWCC. See id.; Record Document 42 at 17. Accordingly, as a matter of law,
Johnson has failed to assert that two or more separate persons conspired to deprive him of his
civil rights, and thus Johnson has failed to assert a viable claim under 42 U.S.C. § 1985(3).

§ 1986. Since the court finds that there is no valid claim asserted in this case under section 1985, there is likewise no valid claim in this case under section 1986.

## C.    Johnson's Remaining Claims.

Johnson's remaining claims are brought under Title VII[6], 42 U.S.C. §§ 1981and 1983[7] and the Equal Protection Clause of the Fourteenth Amendment to the United

---

[6]It is well-established that a claimant must file a Title VII discrimination claim with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the alleged discriminatory act. See Frank v. Xerox Corp., 347 F.3d 130, 136 (5th Cir. 2003). Accordingly, even if Johnson's claims satisfied the requirements described in this ruling, the court agrees with the defendants that all of Johnson's Title VII claims arising from the alleged discriminatory failure to promote Johnson in March of 2006 and July of 2006 must fail as Johnson failed to file a Title VII discrimination claim with the EEOC within 300 days of these alleged discriminatory acts. The EEOC charge filed closest in proximity to these events was signed by Johnson on June 27, 2007. See Record Document 34, Exs. 4 and 5. Johnson represents that it was filed on this same date. See Record Document 42 at 10. The failure to promote Johnson in March and July of 2006 is noted on this EEOC charge form, and, according to this form, the latest date discrimination related to these events took place was July 11, 2006. See id., Ex. 4. This last date, July 11, 2006, was more than three hundred days before the date the EEOC charge was filed.

[7]Even if Johnson's claims satisfied the requirements discussed in this ruling, Johnson's claims based on Title 42, United States Code, Sections 1981, 1983, 1985 and 1986 against the DWCC, an agency of the State of Louisiana, and Michael in her official capacity as the former warden of DWCC, a state official, must fall as they are barred by the Eleventh Amendment of the United States Constitution. As this court previously explained in Jackson v. David Wade Correctional Ctr.:

"The [E]leventh [A]mendment clearly interposes a jurisdictional bar to suits [brought in federal court] against a state by private parties who seek monetary relief from the state [under 42 U.S.C. §§ 1981, 1983, 1985 and 1986] in the form of compensatory damages, punitive damages, or monetary awards in the nature of equitable restitution, and also to suits against a state agency or state official when the monied award is to be paid from the state treasury." Clay v. Texas Women's Univ., 728 F.2d 714, 715 (5th Cir.1984). Although the Eleventh Amendment does not preclude lawsuits against the state seeking prospective injunctive relief, a suit seeking monetary damages is barred. See Cozzo v. Tangipahoa Parish Council-President Gov't., 279 F.3d 273, 280 (5th Cir.2002).

7

States Constitution. As noted previously, Johnson asserts the defendants failed to promote him for illegal, race-based, discriminatory reasons, that he has been exposed to a hostile work environment, and that he has been subject to retaliatory actions taken in response to activity protected under Title VII. The alleged retaliatory action is simply that Michael refused to promote Johnson to a position higher than Facility Maintenance Manager 2; it is unclear specifically what Johnson alleges the defendants were retaliating against. See Record Document 42 at 16. The hostile work environment claim is based on isolated, one-time statements overheard by Johnson made by two DWCC employees that they "wouldn't work for a black man;" however, these comments were made during a period when these two individuals worked under the supervision of Johnson, a "black man." See Record Document 42

---

No. 07-1420, 2008 WL 4500325, at *3 (W.D. La. Oct. 6, 2008) (Stagg, J.). According to the complaint filed by Johnson, he seeks no prospective injunctive relief. See Record Document 1. Rather, he seeks compensatory damages for mental and/or physical injuries incurred as a result of the discrimination against him as alleged in the complaint, back pay, punitive damages, and attorney's fees and costs of litigation. See id. Thus, under the caselaw cited above, Johnson's claims against the DWCC and Michael, in her official capacity, under Title 42, United States Code, Sections 1981, 1983, 1985 and 1986 are barred by the Eleventh Amendment to the United States Constitution. The Eleventh Amendment would not, however, bar Johnson's claims under Title VII. Congress has the power under the Fourteenth Amendment of the Constitution to authorize suits against state employers under certain circumstances. Congress has used this power to authorize such suits under Title VII, but has not authorized such suits under the Civil Rights Act of 1871 (42 U.S.C. §§ 1981, 1983, 1985 and 1986). See Escobedo v. Texas Bd. of Pardons & Paroles, No. H–06-3949, 2009 WL 277562, at *5 (S.D. Tex. Feb. 4, 2009); Early v. Southern Univ. & Agric. & Mech. Coll. Bd. of Sup'rs, 252 F. App'x 698, 700-701 (5th Cir. 2007).

at 15; Record Document 34, Ex. 6 at 65-67. The analysis of each of these alleged employment-related, discriminatory actions is essentially the same under the various statutory and constitutional authorities cited by Johnson. See Davis v. Dallas Area Rapid Transit, 383 F.3d 309, 316 (5th Cir. 2004) ("The summary judgment analysis is the same for claims of race discrimination under Title VII, § 1981, and § 1983."); see also Saucedo-Falls v. Kunkle, 299 F. App'x 315, 323-24 (5th Cir. 2008); Sarpy v. Town of Homer, 284 F. App'x 165, 166-168 (5th Cir. 2008). Assuming arguendo that each of these claims is properly before the court, these claims fail to satisfy the requisite criteria to survive summary judgment.

## 1. Failure To Promote.

Johnson alleges that the defendants failed to promote him for race-based, discriminatory reasons on three occasions: March of 2006, July of 2006 and August of 2008.[8]"An employee can prove discrimination through direct or circumstantial evidence." Jones v. Robinson Prop. Group, L.P., 427 F.3d 987, 992 (5th Cir. 2005). In the relevant portion of his memorandum in opposition, Johnson does not claim that

---

[8]These are the only three specific instances of an alleged failure to promote which the court can identify from the pertinent documents submitted by Johnson. Johnson's complaint does not identify a particular instance in which he was denied a promotion, but rather broadly alleges that such an action occurred. See Record Document 1. The relevant section of Johnson's memorandum in opposition to summary judgment does not clarify this point. See Record Document 42 at 11-16. This court has chiefly relied on Johnson's filings with the EEOC to identify the specific instances where Johnson alleges he was illegally denied a promotion on the basis of race. See Record Document 34, Exs. 4 and 5.

he possesses direct evidence of discrimination which supports his failure to promote claim. See Record Document 42 at 11-16; see also Jones, 427 F.3d at 993 (providing descriptions and examples of direct evidence of discrimination which do not match the evidence presently before this court in regard to Johnson's failure to promote claims). It is clear that Johnson is relying on circumstantial evidence to support his present claims.

"Cases of discrimination based on circumstantial evidence are subject to the McDonnell Douglas burden-shifting analysis." See Davis, 383 F.3d at 316-17 (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824 (1973)).

> To survive summary judgment under McDonnell Douglas, the plaintiff must first present evidence of a prima facie case of discrimination. If the plaintiff presents a prima facie case, discrimination is presumed, and the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the underlying employment action.[9] If the employer is able to state a legitimate rationale for its employment action, the inference of discrimination disappears and the plaintiff must present evidence that the employer's proffered reason was mere pretext for racial discrimination.[10]

Davis, 383 F.3d at 317 (citations omitted).

---

[9]"This burden on the employer is only one of production, not persuasion, involving no credibility assessments." Russell v. McKinney Hosp. Venture, 235 F.3d 219, 222 (5th Cir. 2000).

[10]"[A] plaintiff must present sufficient evidence to find that the employer's asserted justification is false." Crawford v. Formosa Plastics Corp., 234 F.3d 899, 903 (5th Cir. 2000) (citations and quotations omitted).

Even if the court assumes, arguendo, that Johnson has established a prima facie case of a discriminatory failure to promote, his failure to promote claim still fails to satisfy the standards necessary to survive summary judgment. In this case, the defendants have asserted a legitimate, nondiscriminatory reason for failing to promote Johnson in regard to every specific instance discussed in Johnson's complaints to the EEOC. See Record Document 34 at 18-23. The defendants assert that in March of 2006 and in August of 2008 there was a better qualified candidate for the position Johnson desired. See id.; see also Patrick v. Ridge, 394 F.3d 311, 318 (5th Cir. 2004) ("We acknowledge that choosing some other candidate because he is the best-qualified individual for the job is generally a legitimate, nondiscriminatory reason for an adverse employment decision."). In July of 2006, due to institutional needs, the Maintenance Manager 3 position Johnson applied for was closed before being filled and was converted to a plumber/pipe fitter foreman position. See Record Document 34 at 18-23.  Johnson has failed to prove that these nondiscriminatory reasons are mere pretext for racial discrimination, thus summary judgment is appropriate.

The court will first address the March 2006 and August 2008 promotions. Again, the legitimate reason proffered by the defendants for not promoting Johnson in both of these instances was that there was a better candidate.  The Fifth Circuit has

11

stated that "unless disparities in curricula vitae are so apparent as virtually to jump off the page and slap us in the face, we judges should be reluctant to substitute our views for those of individuals charged with the evaluation duty by virtue of their own years of experience and expertise in the field of question." Odom v. Frank, 3 F.3d 839, 847 (5th Cir. 1993). In less graphic terms, the Fifth Circuit has held that under the governing law, "the employer's judgment as to qualifications will not be probative of the issue of a discriminatory motive unless the qualifications are so widely disparate that no reasonable employer would have made the same decision." Deines v. Tex. Dep't of Protective and Regulatory Servs., 164 F.3d 277, 282 (5th Cir.1999). A finding by a court that the applicant promoted over the statutorily protected applicant is "*less* qualified" than the protected applicant will not in and of itself support a finding of pretext for discrimination. Odom, 3 F.3d at 845 (emphasis added). However, a finding that the candidate who did not receive the promotion is "*clearly better* qualified" than the promoted individual may support a finding of pretext. Id. at 845-46 (emphasis added). "Showing that two candidates are similarly qualified does not establish pretext under this standard." Price v. Federal Exp. Corp., 283 F.3d 715, 723 (5th Cir. 2002) (citing Odom, 3 F.3d at 846).

The candidate who ultimately received the position Johnson sought in March of 2006 was Thomas Jerry Ward ("Ward"). See Record Document 34 at 18-19.

12

Johnson does not cite any evidence which would indicate that Ward's selection was inspired by race-based discrimination. See Record Document 42 at 11-16. Furthermore, a review of the applications submitted for this position by Ward and Johnson does not demonstrate that Johnson was clearly better qualified than Ward for the contested position. See Record Document 34, Exs. 10 and 11. Johnson's application revealed that he had approximately 11.10 years of experience in management roles while Ward had approximately 10.28 years of management experience.[11] See id.[12] However, while Johnson collectively managed five individuals

---

[11]In their applications for the March 2006 position, both Ward and Johnson had to describe any relevant prior professional roles they had held. See Record Document 34, Exs. 10 and 11. Specifically, for each role noted, Ward and Johnson were asked to list the date on which they began to serve in that job role and the date they ended their service in that capacity. See id. Furthermore, for each role, both Ward and Johnson were asked to note how many employees they directly supervised, if any, and what titles the supervised employees were given. See id. The court used this information to construct the paragraph above. Specifically, the court calculated the number of years of management experience by first adding together the number of days Ward and Johnson spent in job roles in which they had specifically noted they had directly supervised at least one employee in the spaces on the application form dedicated to this particular purpose. The court then divided the resulting total number of days by 365 to calculate the approximate number of years Ward and Johnson had in management experience. The number of employees Ward and Johnson have directly supervised over the course of their career was deduced by simply adding together the numbers placed in the spaces on the application form dedicated to this particular purpose.

[12]The process which the court utilized to calculate the figures noted above is discussed supra in note 11. The court notes that in regard to his role as Facility Assistant Maintenance Manager 2, Johnson did not, on the pertinent application form, note that he directly supervised any employees in this role in the space specifically designated for this purpose. See Record Document 34, Ex. 10 at 9. Hence, the years Johnson served in this capacity were not included in the calculations discussed supra in note 11. Even if the court had included Johnson's years in this role in the figures noted above, this would not change the end result of the court's analysis.

13

over the course of his career, Ward collectively managed fifty-six. See id. Moreover, compared to Johnson, Ward had managed individuals engaged in a broader range of maintenance/construction activities. See id.

The candidate who ultimately received the promotion of interest in August of 2008 was Buddy Moore ("Moore"). See Record Document 34 at 22. Johnson does not cite any evidence which would indicate that Moore's selection was inspired by race-based discrimination. See Record Document 42 at 11-16. Furthermore, a review of the applications submitted for this position by Moore and Johnson does not demonstrate that Johnson was clearly better qualified than Moore for this position. See Record Document 34, Exs. 13 and 14. In particular, the court notes that Moore's application indicates that he owned and operated his own business, M&M Mechanical Contractors, for over 23 years. See id., Ex. 14 at 4. In this capacity, he supervised employees who engaged in a broad range of maintenance/construction work including plumbers, welders and fitters. See id. Of course, in this role Moore was also responsible for purchasing and budgetary matters. See id. Johnson did not describe a comparable comprehensive executive/management experience in his application. See id., Ex. 13.

Finally, the court will address the Maintenance Manager 3 vacancy to which Johnson applied in or around July of 2006. See Record Document 34 at 20-21. As

14

previously noted, the defendants' legitimate, nondiscriminatory reason for not awarding this position to Johnson is that before any applicant was selected for this position, due to institutional needs, this vacancy was converted to a plumber/pipe fitter foreman position. See id. at 20. In his memorandum in opposition to summary judgment, Johnson has not offered any evidence which demonstrates that this legitimate, nondiscriminatory reason was mere pretext for racial discrimination. See Record Document 42 at 11-16.[13]

Taken as a whole, and viewing all facts and inferences in a light most favorable to Johnson, the court finds that the arguments submitted and the evidence cited by the plaintiff fail to create a fact issue as to whether the defendants' stated legitimate, nondiscriminatory reasons for their failure to promote Johnson in 2006 and 2008 were false or mere pretext for race-based discrimination. Accordingly, the defendants'

---

[13]The defendants note that Johnson asserted in his deposition that the closure of the Maintenance Manager 3 position was done to deny him a promotion. See Record Document 34 at 21. The defendants cite a portion of the transcript of Johnson's deposition in which he states:

Why go through all the trouble of advertising [the Maintenance Manager 3 position], interviewing people for it, and come the time it's to be filled, close it off? I mean, that's self-explanatory. They didn't want me to have it.

Record Document 34, Ex. 6 at 28. This evidence is not sufficient to demonstrate pretext. It is well-established that "a plaintiff cannot merely rely on his subjective belief that discrimination has occurred." Price v. Marathon Cheese Corp., 119 F.3d 330, 337 (5th Cir.1997). Furthermore, as the defendants note, the decision to close the Maintenance Manager 3 position affected both Johnson and the other applicant for this position, a white male, equally. See Record Document 34 at 21.

motion for summary judgment will be granted as to Johnson's failure to promote claims.

## 2. Retaliation.

"To present a prima facie case of retaliation under either Title VII or § 1981, a plaintiff must show that: (1) he engaged in an activity protected by Title VII; (2) he was subjected to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action." Davis, 383 F.3d at 319. Assuming arguendo that Johnson has satisfied the first two elements of this test, he has not cited any evidence in his memorandum of opposition which satisfies the third element of this test, the causal link requirement. See Record Document 42 at 16-17. In support of his retaliation claim, Johnson simply offers the following argument:

> Mr. Johnson was subject to [retaliatory] action by Warden Michaels [sic] in that she refused to promote Mr. Johnson to a higher level than Facility Maintenance 2. Mr. Johnson had been at the facility for over twenty-five (25) years at the time of these actions by the Defendant.
> Mr. Johnson was the most experienced and most knowledgeable person for those positions, but was refused a higher supervisor position by the Warden [Johnny Johnson Deposition p. 41] Warden Michael shouted at Mr. Johnson when he inquired of her reason for denying him a promotion and in return she got angry and said promotion? I thought about demoting you. [Johnny Johnson Deposition pg. 41-42]. [ [14] ]

---

[14]In his deposition, Johnson stated that he felt this statement by Michael was discriminatory because of "the attitude she had and screaming and hollering and stuff like that, not being professional." Record Document 34, Ex. 6 at 42.

See Record Document 42 at 16 (brackets with citations included in original). The court has examined the sections of Johnson's deposition which are cited in the paragraph above. These cited sections describe a conversation which took place sometime during 2006 between Michael, Jerry Goodwin and Johnson concerning the decisions rendered in 2006 to award contested promotions to individuals other than Johnson. See Record Document 34, Ex. 6 at 40. Johnson's deposition testimony indicates only that Michael became frustrated during the conversation.

In the cited deposition transcript, Johnson does not allege that any individual implied that the failure to promote him in 2006 was in any way connected with activity protected under Title VII. See id., Ex. 6 at 40-42. The court also notes that the first EEOC charge was filed on June 27, 2007, several months after the cited 2006 conversation. See Record Document 34, Ex. 4; Record Document 42 at 10. Additionally, in the portion of the deposition transcript cited above, Johnson did not testify that he notified Michael of any possible civil rights actions before or during the conversation of interest. See Record Document 34, Ex. 6 at 40-42. Thus, it is apparent that any personnel actions taken in 2006 were not based upon a proposed or pending EEOC charge or civil rights action.

Moreover, Johnson has not specifically argued or submitted evidence that demonstrates that the failure to promote him in 2008 was an act of retaliation. Even

17

if Johnson did make this allegation, considering the evidence presently before the

court, this claim could not prevail. As the defendants point out, the only evidence of

relevant activity protected under Title VII is an EEOC charge filed approximately

fourteen months prior to the contested 2008 promotion decision, in June of 2007. See

Record Document 34 at 23; Record Document 42 at 10. The lack of close temporal

proximity between the contested 2008 promotion decision and the June 2007 EEOC

filing[15] suggests the absence of causality. See Clark County School Dist. v.

Breeden, 532 U.S. 268, 273-74, 121 S.Ct. 1508, 1511 (2001).[16]

In sum, Johnson has failed to produce any evidence of a causal connection

between any decision not to promote him and any activity protected by Title VII.

_____

[15]Both Title VII and its implementing regulations require that an employer be given notice
within 10 days of the filing of an EEOC charge. See Clark County School Dist. v. Breeden, 532
U.S. 268, 273, 121 S.Ct. 1508, 1511 (2001); 42 U.S.C. §§ 2000e-5(b), (e)(1); 29 CFR § 1601.14
(2010). Thus, the court presumes that the defendants knew about the EEOC charge shortly after
it was filed. See Breeden, supra.

[16]As the Supreme Court explained in Breeden:

The cases that accept mere temporal proximity between an employer's knowledge of
protected activity and an adverse employment action as sufficient evidence of
causality to establish a prima facie case uniformly hold that the temporal proximity
must be "very close," O'Neal v. Ferguson Constr. Co., 237 F.3d 1248, 1253 (C.A.10
2001). See, e.g., Richmond v. ONEOK, Inc., 120 F.3d 205, 209 (C.A.10 1997)
(3-month period insufficient); Hughes v. Derwinski, 967 F.2d 1168, 1174-1175
(C.A.7 1992) 4-month period insufficient). Action taken (as here) 20 months later
suggests, by itself, no causality at all.

Breeden, 532 U.S. at 273-74, 121 S.Ct. at 1511.

Accordingly, summary judgment is appropriate as to Johnson's retaliation claims.

### 3. Hostile Work Environment.

In order to establish a hostile working environment claim, Johnson must prove

that:

> (1) [he] belongs to a protected group; (2) [he] was subjected to
> unwelcome harassment; (3) the harassment complained of was based on
> race; (4) the harassment complained of affected a term, condition, or
> privilege of employment; (5) the employer knew or should have known
> of the harassment in question and failed to take prompt remedial action.
> For harassment on the basis of race to affect a term, condition, or
> privilege of employment, as required to support a hostile work
> environment claim under Title VII, it must be sufficiently severe or
> pervasive to alter the conditions of the victim's employment and create
> an abusive working environment.
>    In determining whether a workplace constitutes a hostile work
> environment, courts must consider the following circumstances: the
> frequency of the discriminatory conduct; its severity; whether it is
> physically threatening or humiliating, or a mere offensive utterance; and
> whether it unreasonably interferes with an employee's work
> performance.

Ramsey v. Henderson, 286 F.3d 264, 268 (5th Cir. 2002) (quotations and citations

omitted). The following two paragraphs and one citation to three pages of record

evidence constitute the entirety of Johnson's argument in regard to the hostile work

environment claim:

> Mr. Johnson was faced with a hostile work environment from his
> subordinates in the maintenance department. The maintenance
> department which is all white with the exception of one other person
> created a hostile environment.

19

> Mr. Johnson was subject to statements from white subordinates stating that they wouldn't work for a black man, alone [sic] with other comments. Mr. Johnson specifically remembers Jerry Ward and John Fussell making these comments. [Johnny Johnson Deposition pg. 65-67]

Record Document 42 at 15 (brackets with citation included in original). In the transcript of the deposition cited in the paragraph above by Johnson, Johnson goes on to state that Jerry Ward and John Fussell were the only two people he heard make a specific hostile statement; as noted above, he reportedly overheard these individuals both say to each other that they wouldn't work for a black man. See Record Document 34, Ex. 6 at 66-67. However, during the deposition, Johnson also confirmed that at the time he heard Ward and Fussell make these statements they both worked for Johnson. See id. According to Johnson, this hostile set of statements was made during a conversation between only Ward and Fussell and, to his knowledge, no one else heard this statement. See id., Ex. 6 at 67. During the deposition, Johnson could not recall whether he ever discussed this statement with Michael. See id. Johnson did not directly suggest or present evidence to support a claim that this isolated set of statements affected his career in any meaningful way. Considering the arguments and evidence before the court, the court finds that Johnson has failed to satisfy the last two elements of the hostile work environment test. Johnson has failed to demonstrate that the harassment complained of affected a term, condition, or

20

privilege of employment, and that the employer knew or should have known of the harassment in question and failed to take prompt remedial action. Therefore, summary judgment is appropriate in regard to Johnson's hostile work environment claims.

### III. CONCLUSION

Based on the foregoing analysis, the defendants' motion for summary judgment (Record Document 34) is **GRANTED**. A judgment consistent with the terms of this Memorandum Ruling shall issue herewith.[17]

**THUS DONE AND SIGNED** at Shreveport, Louisiana, this 23rd day of April, 2010.

JUDGE TOM STAGG

---

[17]The court finds that all of Johnson's claims, even those asserted against Michael in her individual capacity, fail to survive summary judgment for the reasons set forth above. Accordingly, it is unnecessary to address the outstanding motion to dismiss the claims asserted against Michael in her individual capacity. That motion (Record Document 23) is now **MOOT**.